# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Respondent,*

vs.

TERRY LEE OCKERT, JR.,

    *Petitioner*

Case No. 17-CR-10151-EFM-1
(6:21-CV-01213-EFM)

## MEMORANDUM AND ORDER

Before the Court is Petitioner Terry Lee Ockert's Motion to Vacate Sentence (Doc. 97). Ockert seeks relief under 28 U.S.C. § 2255 on the ground of ineffective assistance of counsel. The Court denies the motion for reasons set forth below. Because review of Ockert's motion and the files and record of the case conclusively show that he is not entitled to relief under § 2255, the Court denies the motion without an evidentiary hearing.

### I.    Factual and Procedural Background

The facts surrounding Ockert's judgment of conviction are as follows. In the early hours of June 18, 2017, Sedgwick County Deputy Sheriff Kaleb Dailey was travelling westbound in his patrol car on 63rd Street south near Haysville, Kansas. Around 1:20 a.m., Deputy Dailey observed

Ockert also travelling westbound on 63rd Street about three to four blocks ahead of him. Deputy Dailey saw Ockert's vehicle cross the center line of 63rd Street. He sped up to close the distance between his patrol car and the vehicle but did not turn on his emergency lights. After the vehicle crossed the railroad tracks several blocks later, Deputy Dailey caught up to it and engaged his emergency lights, which activated the recording mechanism on the patrol vehicle's dash cam.

Video recording from the dash cam shows that Deputy Dailey was initially traveling about 70 m.p.h. toward Ockert's vehicle, which is 25 m.p.h. over the posted speed limit. At 1:22:12 a.m., the deputy's speed slowed to 63 m.p.h., and at 1:22:16, he slowed to 55 m.p.h. The video also shows that at 1:22:16 Ockert's vehicle crossed the center line of 63rd street for a couple of seconds and then returned to the center of the westbound lane.

After crossing the railroad tracks, Ockert pulled into a private drive. Deputy Dailey followed him, and by the time he parked his patrol vehicle, Ockert was already getting out of his car. Deputy Daily informed Ockert that he pulled him over because he drove left of center. He then asked Ockert if he had his driver's license or any other identification, to which Ockert responded that he did not. Deputy Dailey patted Ockert down for weapons and took his identifying information. He then said to Ockert, "I'm guessing the reason I saw you go left of center is probably cause you were watching me behind ya, coming up behind ya." Ockert responded, "Yeah, I saw you come up really fast so." Deputy Dailey then told Ockert to "hang tight" and returned to his patrol car to contact Spider for outstanding warrants.

At 1:30:12 a.m., Sedgwick County Deputy Sheriff Cody Rexroat arrived to assist Deputy Dailey. Deputy Dailey explained to Deputy Rexroat why he pulled Ockert over and told Rexroat he was waiting on a report from Spider. Ockert then asked Deputy Dailey if he had any outstanding

warrants. When Deputy Dailey responded that he didn't know, Ockert informed him that he had a warrant in "Abilene" and that his license was restricted for a DUI.

During this conversation, Deputy Rexroat approached the passenger side of Ockert's vehicle and looked in the windows using his flashlight. Deputy Dailey and Deputy Rexroat then had a conversation in which Rexroat indicated that he could smell marijuana coming from the car and that there was a firearm located in the car. Deputy Dailey testified that after this conversation he walked to the rear of Ockert's car and smelled marijuana as well. When he told Ockert this, Ockert denied that there was marijuana in the vehicle, but said, "If you would've said meth or something maybe, no uh, no . . . ." Ockert also told Deputy Dailey that he could not search his car. At this point, at approximately 1:33:40 a.m., Deputy Dailey arrested Ockert for driving on a suspended license without an interlock device.

After arresting the Defendant, Deputies Dailey and Rexroat continued to walk around the vehicle and look inside its windows. Deputy Dailey commented about an odor of marijuana and opined that he was "pretty sure" that Ockert was a convicted felon. A little later, Deputy Dailey looked into the front passenger window and saw a black and white cigarette box with a plastic bag sticking out of it. The bag contained a white or clear substance that he suspected was methamphetamine. Deputy Dailey opened the car door, removed the cigarette box from the passenger seat, and confirmed that it contained methamphetamine. The officers then searched the vehicle and seized a loaded .22 caliber rifle and a 100-round capacity drum magazine for the rifle. In addition, the investigation revealed that the VIN number plates had been changed and that the vehicle was stolen.

On October 11, 2017, the grand jury returned an indictment charging Ockert with one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). Ockert

filed a Motion to Suppress asking the Court to suppress all evidence found within his vehicle. The Court denied Ockert's motion after a hearing. Ockert then entered a guilty plea, and the Court sentenced him to 78 months' imprisonment on February 21, 2019. Ockert later appealed the Court's prior ruling on his motion to suppress to the Tenth Circuit.[1] On October 5, 2020, the Tenth Circuit affirmed the district court's ruling, and Ockert filed a petition for writ of certiorari to the Supreme Court of the United States. The Supreme Court denied the writ on April 19, 2021.

On appeal, Ockert argued that (1) this Court erred in finding that Deputy Dailey had the requisite reasonable suspicion to pull him over and initiate the traffic stop and (2) the plain view doctrine did not justify the subsequent search of the car because the deputies lacked lawful access to the vehicle. The Tenth Circuit rejected these arguments, concluding that Deputy Dailey had reasonable suspicion to initiate the stop and that Ockert had waived the argument that the deputies did not have lawful access to his vehicle at the time the evidence was seized. Ultimately, the Tenth Circuit affirmed the Court's denial of Ockert's motion to suppress.

In September 2021, Ockert filed the instant § 2255 motion asking the Court to vacate his conviction and sentence. Liberally construing Petitioner's motion, he asserts four grounds for relief. First, Ockert asserts that he received ineffective assistance of counsel because his lawyer "did not raise an issue concerning the warrentless [sic] (Plain View) that altamently [sic] should have been grounds to suppress the contraband found after the stop" and did not raise "2 of the 4 prongs for plain-view." Related to this ground, Ockert asserts that his attorney "didn't try to make the statement made by my judge relevant findings." Third, Ockert asserts that he received ineffective assistance of counsel because his appellate attorney "did not raise/argue the plain error

---

[1] *See United States v. Ockert*, 829 F. App'x 338 (10th Cir. 2020), *cert. denied,* 209 L. Ed. 2d 560 (2021).

standard of review in opening brief so I didn't get that right/review." And fourth, Ockert asserts that he received ineffective assistance of counsel because his lawyer did not adequately argue "the officer's admittance to breaking the law and violating the Sheriff's Department policy on speeding, along with the officer's statement about how even he would have been distracted by his driving due to the totality of the circumstances."

## II.  Legal Standard

Petitioner now seeks to vacate his sentence under 28 U.S.C. § 2255. Section 2255(a) provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Petitioners seeking relief under § 2255 must allege facts that, if proven, would warrant relief from their conviction or sentence.[2] Upon receipt of a § 2255 motion, the court must hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[3] An evidentiary hearing is therefore not necessary where a § 2255 motion contains factual allegations that are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[4]

---

[2] *See Hatch v. Okla.*, 58 F.3d 1447, 1469 (10th Cir. 1995), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001).

[3] 28 U.S.C. § 2255(b).

[4] *See Hatch*, 58 F.3d at 1471 (stating that "the allegations must be specific and particularized, not general or conclusory"); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that were merely conclusory in nature and without supporting factual averments).

Finally, Ockert appears pro se. Pro se pleadings are held to "less stringent standards than formal pleadings drafted by lawyers."[5] A pro se litigant is entitled to a liberal construction of his pleadings.[6] It is not the proper role of a district court, however, "to assume the role of advocate for the pro se litigant."[7] For that reason, the Court shall not supply additional factual allegations to round out a petitioner's claims or construct a legal theory on his behalf.[8]

### III.   Analysis

**A.   § 2255 Motion to Vacate**

Ockert seeks to vacate his sentence under 28 U.S.C. § 2255, contending that he received ineffective assistance of counsel.

To succeed on a claim of ineffective assistance of counsel, a petitioner must meet the two-prong test set forth in *Strickland v. Washington*.[9] Under *Strickland*, a petitioner must show: (1) his counsel's representation was constitutionally deficient because it fell below an objective standard of reasonableness, and (2) the deficiency prejudiced the petitioner because it deprived him of the right to a fair trial.[10] To prevail on the first prong, a petitioner must demonstrate the omissions of his counsel fell "outside the wide range of professionally competent assistance."[11] This standard is "highly demanding."[12] Strategic or tactical decisions on the part of counsel are presumed

---

[5] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[6] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because Mr. Trackwell appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.")

[7] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[8] *See Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

[9] 466 U.S. 668 (1984).

[10] *Id*. at 687.

[11] *Id*. at 690.

[12] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[13] The reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error.[14] "[E]very effort should be made to 'eliminate the distorting effects of hindsight.' "[15]

With regard to the second prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[16] The court must determine "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[17] Courts reviewing an attorney's performance must exercise deference, as "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[18] A failure to prove one of the *Strickland* prongs is dispositive to a petitioner's claim, and a court may dispose of either the first or second prong, whichever is easier to resolve.[19]

*1.     Ground One*

Under Ground One, Ockert asserts that his trial counsel should have argued all four elements of the Tenth Circuit's test for plain view seizures as outlined in *United States v. Corral*.[20] Under *Corral*,

> A plain view seizure of incriminating evidence is sustainable if (1) the item is indeed in plain view; (2) the police officer is lawfully located in a place from which

---

[13] *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quoting *Hatch*, 58 F.3d at 1459) (alteration in original).

[14] *See Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996).

[15] *Id*. at 1114 (quoting *Strickland*, 466 U.S. at 689).

[16] *Strickland*, 466 U.S. at 694.

[17] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citation omitted).

[18] *Strickland*, 466 U.S. at 690.

[19] *United States v. Orange*, 447 F.3d 792, 796-97 (10th Cir. 2006) (citations omitted).

[20] 970 F.2d 719 (10th Cir. 1992).

the item can plainly be seen; (3) the officer has a right of access to the item itself; and (4) it is immediately apparent that the seized item is incriminating on its face.[21]

In this Court at the suppression hearing, Ockert's lawyer argued the first and fourth elements. His appellate counsel then attempted to argue the second and third elements, but the Tenth Circuit found Ockert had waived the argument by failing to raise it before this Court. Ockert's trial counsel did not ineffectively fail to argue all four prongs of the *Corral* test at the suppression hearing because Ockert's arguments regarding the second and third elements lack merit.[22]

Ockert's argument on appeal was that "the officers were not lawfully in a position to access Ockert's vehicle because it was on a private driveway and the officers lacked a warrant." He contended that parking and exiting the vehicle within the curtilage of a private residence gave the car heightened protection under the Fourth Amendment. However, the cases he cited involved vehicles parked within the curtilage of a suspect's *own home*. This is a crucial difference because Fourth Amendment rights are personal; a person cannot claim a Fourth Amendment violation based on evidence procured through an illegal search and seizure of a third person's property or premises.[23]

The most analogous case Ockert cited in his appellate brief is *State v. Roaden*,[24] an Ohio Court of Appeals decision. In *Roaden*, the police received a complaint that a car registered to Roaden was speeding. The officer testified that he attempted to catch Roaden with radar for two

---

[21] *Id*. at 723.

[22] *See Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) ("[I]f the issue is meritless, its omission will not constitute deficient performance.").

[23] *United States v. DeLuca*, 269 F.3d 1128, 1131 (10th Cir 2001).

[24] 648 N.E.2d 916, 919 (Ohio App. 1994).

hours and then decided to go to his home to give him a "courtesy warning" about speeding.  Upon arriving, the officer found Roaden's car parked in the driveway of a vacant mobile home next door to his residence.  The officer walked past the car and saw evidence of drug activity in plain view.  He went next door to Roaden's home and asked him to step over to the car so he could issue a citation for possession.  The officer then searched the car and found more drug paraphernalia, arrested Roaden, patted him down, and found more drugs.[25]

The government made the same argument it makes here: "[T]he items in [Roaden's] car were in plain view and [ ] [he] has no standing to challenge the search of his car since it was parked in a driveway in which he did not have a possessory interest."[26]  However, the court rejected that argument, finding the search was pretextual and therefore invalid.  The court determined that the officer "did not have probable cause or even a reasonable suspicion to justify intruding on private property and looking into [Roaden's] vehicle.  We do not believe that spending two hours looking for a speeder and going out of the way to give a warning about speeding are actions a reasonable officer would take without an invalid purpose.  Instead, we think it clear that [the officer] manipulated events to conduct a search that could not otherwise be made and therefore his reason for being on the property and looking into [Roaden's] vehicle was pretextual."[27]  The court went on to distinguish cases where the circumstances exhibit the "exigency created by the inherent mobility of and the lessened expectation of privacy in an automobile"[28] and cited cases distinguishing between the warrantless impoundment of a vehicle from a public place and

---

[25] *Id*. at 917-18,

[26] *Id*. at 918.

[27] *Id*.

[28] *Id.* at 919.

impoundment requiring entry onto private property.[29]  The court found that "the plain-view doctrine requires that the initial intrusion that brought the police into a position to view the object must have been lawful . . . [A] pretextual intrusion upon private property cannot be used to justify finding items in plain view."[30]

The facts of Ockert's case are easily distinguishable.  Deputy Dailey's entry onto the private property where Petitioner stopped his car was not pretextual.  Dailey observed Ockert cross the center line twice while driving behind him.  He put on his emergency lights to indicate that Ockert should pull over.  Ockert chose to pull into a private driveway and leave his car.  When Deputy Dailey pulled up, Ockert was just outside his car.  Ockert had no connection to the residence whose driveway he chose or to any other residence in the vicinity.  Ockert's case involved the exigency of a traffic stop, while *Roaden* did not.  Finally, that stop was found to be based on reasonable suspicion, not pretext.  The initial intrusion that brought the police into a position to seize the firearm was lawful.

To show his constitutional rights were violated by the warrantless search, Ockert needed to show that he had a subjective expectation of privacy in the premises searched and that society is prepared to recognize that expectation as reasonable.[31]  Counsel for Ockert had no reasonable basis to argue that Ockert had an expectation of privacy in the driveway where he stopped.  There is no evidence in the record that Ockert owned or rented the property or had any ongoing permissive connection to the property.  Even if Ockert had a subjective expectation of privacy in the private driveway, the Court finds that society is not prepared to recognize such expectation as

---

[29] *Id*.

[30] *Id.*

[31] *United States v Higgins*, 282 F.3d 1261, 1270 (10th Cir. 2002).

reasonable. Accepting Ockert's argument would mean that a driver being stopped by the police could merely pull into any private driveway to avoid a potential search of his or her vehicle.

Furthermore, the failure of Ockert's trial counsel to argue the third factor of *Corral* was also not unreasonable. The deputies had a lawful right of access to the items seized. This third factor of the plain view test "is implicated in situations such as when an officer on the street sees an object through the window of a house, or when officers make observations via aerial photography or long-range surveillance."[32] In those circumstances, the officers cannot justify a warrantless seizure under the plain view doctrine "because to do so would require a warrantless entry upon private premises."[33] The instant case does not involve such a situation. Deputy Dailey conducted a lawful stop of Ockert and thus had a lawful right of access to the objects in plain view through the windows of the car.[34]

In sum, Ockert's counsel did not act ineffectively by failing to argue the second and third *Corral* elements. Because Ockert's argument lacks merit, he was not prejudiced by counsel's failure to raise the argument at the hearing on the suppression motion.[35] Ockert therefore fails to satisfy *Strickland*. This assignment of error is without merit and dismissed.

2.   *Ground Two*

Ockert seems to be arguing in Ground Two that his attorney was ineffective by failing to preserve the question of whether the government met all of the elements of *Corral*. Because the

---

[32] *United States v. Naugle*, 997 F.2d 819, 823 (10th Cir. 1993).

[33] *Id*.

[34] *See United States v. Matthews*, 422 F. Supp. 3d 1235, 1247 (W.D. Ky. 2019) (finding officer was legally present at the location from which he plainly saw the firearm because the traffic stop was valid).

[35] *See Glynn v. Heimgartner*, 2013 WL 2449545, at *11 (D. Kan. 2013) (citing *Orange*, 447 F.3d at 796) ("Counsel's failure to raise a meritless issue is not prejudicial, so [it] cannot constitute ineffective assistance.").

Court has already found that the attorney's failure to argue the second and third Corral elements did not amount to ineffective assistance, the failure to preserve the issue was also not ineffective.

    3.    *Ground Three*

In Ground Three, Petitioner asserts that his appellate counsel "did not raise/argue the plain error standard of review in opening brief so I didn't get that right/review." He does not identify any specific issue of which he was denied review under the plain error standard.

This ground appears to arise from a footnote in the Tenth Circuit's opinion rejecting Ockert's attempt to argue elements two and three of the *Corral* test. In discussing whether Ockert had waived or merely forfeited the argument, the court first found that suppression-related arguments are automatically waived if not preserved below. The court went on to say that, moreover, "Ockert failed to argue the plain error standard of review in his opening brief before us. And this court has found that non-preserved arguments are typically waived on appeal if the litigant 'did not argue for plain error in his opening brief.'"[36]

Because this Court has found that Ockert's argument that elements two and three of the *Corral* test were not met lacks merit, any deficiency by his counsel in failing to argue for plain error review is not prejudicial. Furthermore, as the government points out, Ockert's appellate counsel did in fact argue for plain error review of the private property issue in his Reply brief, thus depriving Ockert of the factual basis for this ground.[37]

---

[36] *Ockert*, 829 F. App'x at 344 n.3.

[37] Doc. 100, Def.'s Reply Br., at 14.

   *4.     Ground Four*

   Ockert asserts that he received ineffective assistance of counsel because his lawyer did not adequately argue "the officer's admittance to breaking the law and violating the Sheriff's Department policy on speeding, along with the officer's statement about how even he would have been distracted by his driving due to the totality of the circumstances."

   As to Deputy Dailey's admission that he exceeded the speed limit, Ockert fails to explain what argument his attorney could have made that would have been relevant to the suppression of evidence. The Court can conceive of none.

   Finally, as to the deputy's driving distracting Ockert, Petitioner's counsel made the argument at the suppression hearing that the deputy caused Ockert to weave the second time.[38] Further, he made the argument in his pleadings, arguing "Deputy Dailey wanted to pull Ockert over, so he sped up behind him, distracted Ockert, which resulted in a lane departure, and effected a traffic stop."[39] Ockert's counsel did not ineffectively fail to make the argument.

**B.    Evidentiary Hearing**

   An evidentiary hearing on Ockert's motion is not necessary because the motion and records of the case conclusively show that he is not entitled to relief.[40]

                           **.III.    Certificate of Appealability**

   Rule 11 of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner. A court may only grant a COA "if the applicant has made a substantial showing of the denial of a

---

[38] Doc. 86, at 100.

[39] Doc. 43, at 43.

[40] *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995) (citing 28 U.S.C. § 2255).

constitutional right."[41]  A petitioner satisfies this burden if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[42]  For the reasons explained above, Ockert has not made a substantial showing of the denial of a constitutional right. Therefore, the Court denies a COA.

**IT IS THEREFORE ORDERED** that Petitioner Terry Ockert's Motion to Vacate Sentence (Doc. 97) is **DENIED.**

**IT IS SO ORDERED.**

This case is closed.

Dated this 2nd day of March, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[41] 28 U.S.C. § 2253(c)(2).  The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit district judge issues a COA.  28 U.S.C. § 2253(c)(1).

[42] *Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 524 U.S. 274, 282 (2004)).